Good morning, Your Honors. If it pleases the Court, I'm Larry Setchell from the Seattle Firm of Hell's Hole Fetterman. I represent the appellant, Mr. Jim Anderson. Mr. Anderson and his family are here with me this morning, and I respectfully request the Court to reserve five minutes of my argument time for rebuttal if necessary, and also to allow me to submit to the Court on the briefs the issues that I do not touch on in this oral argument. I wish to emphasize four points here. This is a Hyde Amendment appeal. I know that this Court is familiar with the Hyde Amendment, so I won't take your time discussing its history or content. But Mr. Anderson respectfully requests that this Court seriously consider what we contend has been a terrible injustice wrought by the trial court's decision not to look at what happened here before the grand jury that resulted in what we contend was a frivolous indictment. The first point, I wish to make four points, Your Honors. The first is, let's take the government up on its challenge and determine legally what it requires to make one a prevailing party under the Hyde Amendment. The second point is, let's take the government up on its challenge and determine legally what it requires to make one a prevailing party under the Hyde Amendment. The third point is, let's take the government up on its challenge and determine legally what it requires to make one a prevailing party under the Hyde Amendment. The fourth point is, let's take the government up on its challenge and determine legally what it requires to make one a prevailing party under the Hyde Amendment. The Fifth point is, let's take the government up on its challenge and determine legally what it requires to make one a prevailing party under the Hyde Amendment. I don't know the man. I don't know the dynamics of the case. But I can't believe the nerve to ask the court then, after he had already pleaded guilty to a crime, to award him Hyde fees. That is not what happened here. Here, there was no trial. We did not get beyond – I'm not a criminal defense lawyer, so when I use these cases, I use them because I've been taught to use them. We didn't get beyond Kenthorn, Brady, or Jenks. There was no discovery to speak of, although 30-some thousand documents were provided, and I've used those as best I can in my brief to make the point that we made. But to some, here, like in Braunstein, the Hyde Amendment case where this Court reversed and remanded with instruction to award attorneys fees, the government moved to dismiss charges. That alone is enough, because Mr. Anderson got an order providing him the relief to request it, and we respectfully ask you to so rule. The second point on the merits here is that the Court erred in ruling at page 3 of its opinion, note 2, that the Hyde Amendment only applies to post-indictment prosecutorial conduct and that evidence of improper FAA motives is irrelevant. I read directly from ER 368. Your Honors, we respectfully submit that that's legally wrong and that that legal error infected the rest of the judge's analysis. We say so because the Hyde Amendment itself allows the Court, for good cause, to inspect grand jury evidence and to take other evidence ex parte or in camera. That language would be meaningless if the Court were not permitted to look at what went on before the grand jury when requested by a Hyde Amendment claimant. Further, the Hyde Amendment states that the agency responsible for bringing the claim, and this is in the Hyde Amendment, is responsible to fund the claim if it is granted. Once again, if it were not permissible for the Court to look at the agency conduct to determine the motive of the agency. But who's the agency that brought this claim? Federal Aviation Administration, Your Honor. It's a criminal indictment. The FAA can't bring a criminal indictment. The FAA investigated and supported the indictment and testified before the grand jury. You said supported. I said who brought. It seems to me that in a criminal context, is there any authority to support the proposition that anybody other than the Department of Justice is the relevant agency? None, Your Honor. The Hyde Amendment says that fees and expenses awarded under this provision shall be paid by the agency over which the party prevails. The agency that brought the litigation, but the FAA didn't bring this litigation. This isn't like a Federal agency suing somebody for money. Other Federal agencies can go into court in some context. This is a criminal indictment we're talking about. How can it be anybody other than the Department of Justice? To my best knowledge, Your Honor, as great as I can say it, it can't. Well, then why are we talking about the FAA? Because the Hyde Amendment also incorporates the Equal Access Adjustment Justice Act procedures and standards. Let me stop you. I think I understand what you're trying to say, but I look at the statutes, and they speak to me about the government's litigation position. Now, a citizen can be abused by a Federal agency in lots of ways, but being abused by a Federal agency doesn't guarantee you a route to a claim under the Hyde Amendment. Hyde Amendment, it seems to me, is tied to litigation. And in this case, the litigation that was brought was a criminal indictment. Well, that's not something the FAA can do. So I see the premise of your argument that somehow this reaches the FAA. I don't get the connection. I can help you, Your Honor, and I can build that bridge. Well, can you give me any authority that supports the proposition that a different administrative agency can be responsible or held responsible for a criminal indictment? Yes, Your Honor, clear authority. The Hyde Amendment imposes liability when the position of the government is found to have been frivolous, vexatious, et cetera. The Hyde Amendment refers to and incorporates the standards of the EAJA. The position of the term, position of the government, is specifically defined in the EAJA, whereas it is not defined in the Hyde Amendment. In the EAJA, at 28 U.S.C. section 2412d2d, the term position of the U.S. is defined to mean, quote, in addition to the position taken by the U.S. in the civil action, the action or field of law. But there isn't a civil action here. No. I agree with that, Your Honor. I'm still waiting for the authority that tells me a criminal indictment is something that can be attributed to the FAA or some other administrative agency. The only appellate authority I have for that is U.S. v. not. I believe that's the First Circuit case, the environmental case, where the Court stated, and this is not the holding in the case, but at page 256F3rd31, it is permissible for courts to consider the conduct of the investigation in order to provide a context in which to assess whether a prosecution was vexatious. Now, this only makes common sense to me. If the Court is asked to decide whether the position of the government was vexatious or in bad faith, how can the Court decide that without looking at what went on before the grand jury when asked to do so in a case where at least the kind of showing we have made is made that something terrible went wrong here? Finally, there is another case, Your Honor. It's a district court case out of Oklahoma, not binding in this Court, but it has been followed everywhere that it's been considered. It has not been disassociated from, and that's the Gardner case. The Gardner case, we cited and argued on this point in our brief. That's 23 Federal 2nd 1283 out of Oklahoma. There the Court was presented with the exact question that I'm asking the Court to decide here on behalf of Mr. Anderson. The Court, that was a tax fraud prosecution. In Gardner, the Court was asked by the Hyde claimant to allow discovery and to investigate what went on before the grand jury on the part of IRS agents. The Court in Gardner was very careful to guard its power under the Hyde Amendment and its inherent power to investigate matters such as this, but at page 1294 and 1295 of its opinion, it ruled exactly as I asked you to rule a moment ago, and that is that the Hyde Amendment incorporates the Equal Access to Justice Act definition of the position of the United States to include the activities of the agency and not limited to the litigating position taken by the Department of Justice. And because the Internal Revenue Service is an agency for purposes of the Hyde Amendment, the EAJA explicitly states that in addition to the position taken by the United States in the civil action, the position of the United States includes the action or failure to act by the agency. So the Court went on to grant limited discovery, not unlike the discovery that we were talking about earlier, and respectfully submit that if this Court were to rule as a matter of law, as we request, that it is permissible under the Hyde Amendment for the Court to look at grand jury testimony and the conduct of the agency. The Court here specifically ruled that the motives of the agency are irrelevant. That's error. We submit. If so, then to cure that error, a reversal and remand we respectfully submit is necessary. This leads me to the third point that I want to emphasize here, if I may, Your Honors. And this, I believe, also is kind of at the crux of the appeal and the real problem facing Mr. Anderson in this case. And that is that unlike every other Hyde Amendment appeal that I'm aware of in this circuit and others, there really is no record. This case was resolved by dismissal before Brady, Hanthorne, Jenks, McKee, and some Hanthorne materials were disclosed on the eve of dismissal, but not all. And thus, as a civil lawyer representing Mr. Anderson trying to present and put together a record for the trial court, I don't have the testimony of anyone. And the trial court, you know, is a good judge. He lamented the absence of a record here and chose not to create one. We respectfully submit that as in the Bronstein case, the presence of a record is critical to the court's ability to assess whether the kind of conduct we assert happened here that renders the prosecution frivolous, in bad faith, or vexatious. The one case that I want to distinguish and to let you know that I'm aware of it is your Lindbergh decision. In Lindbergh, Mr. Lindbergh asked for discovery and review of materials in addition to the trial record that was before the trial court who decided his Hyde claim. Lindbergh had been convicted of one count of conspiracy to commit tax fraud, and on appeal, this Court reversed the conviction on substantive grounds. Mr. Lindbergh then brought a Hyde claim and sought discovery, in the words of this Court in the Lindbergh case, to establish the government's knowledge of lack of proof. The discovery request was denied in Lindbergh by the trial court in part because there was already a thorough trial record for the Court to evaluate whether the indictment and prosecution had enough merit to pass Hyde scrutiny. And this Court, on appeal, focused on the idea that Mr. Lindbergh was arguing for discovery to establish knowledge of lack of proof as opposed to proof, in fact, of vexation, frivolity, or bad faith. On the contrary here, our record shows you that we properly moved before the trial judge for leave to conduct what we call limited discovery. Frankly, I agree that the authorities clearly show that Judge Kuenhauer has the discretion to decide what discovery and what investigation he's going to do. The problem here is he didn't provide you or us a good cause analysis to explain why he ruled the way he is. Instead, he went quickly by our evidentiary objections to the government's submission. He went quickly by the local rules. Again, why discretion? I understand that, and I'm not going to dwell on it. But unlike in Lindbergh, we have no record to present to you or to present to Judge Kuenhauer because he didn't do the good cause work to figure out whether one should be presented, and that's not right. We respectfully submit. Well, among the arguments in Lindbergh is an argument that's not identical, but is somewhat similar, that where Lindbergh was arguing that he ought to be entitled to obtain more information, in effect seeking a form of discovery, and he was turned down by the district court, and we affirmed. That suggests at a minimum there's not a right to such discovery. And so to say that, I understand you're handicapped because you don't have anything to build on, and it's hard to make the necessary showing to justify it, but presumably you need to be able to give the court something so that the court's exercise of discretion can be argued thus to be abusive. And what is it you have here that gives the basis, and maybe I realize you're getting toward the end of your time, but it seems to me that the crux of this is, in fact, let me just be direct about it. I take it you concede that Mr. Powell was a bad actor. Mr. Powell did some pretty bad things. And that Mr. Powell was your client's partner. Yes. It turned out that way, Your Honor. Doesn't that by itself suggest that the government's not off on some wild frolic? They're dealing with somebody that you later discover is a pretty bad character. There are people who pled out here. And is it going to be so obvious from the government from the get-go that the bad guy's partner is himself a dupe or a victim of this enterprise? I mean, isn't there some reason for the government to be suspicious about who else this guy is conniving with and who else might be involved in the fraud? Not under the circumstances of this case. Mr. Powell was a bad actor in ways, but not in criminal ways. The problem with the indictment is that pages ER5 and 6, the whole core of the indictment, purpose, and manner, and means of the alleged conspiracy are dead wrong under aviation law. We argue that. Let me ask you about one rather dramatic statement by the government in its brief. Yes, Your Honor. There is no evidence that Powell, Anderson, or Intrex ever possessed as much as a single rivet from the original bill 204B, serial number 2041. It's on the government's brief, page 23. What do you say to that? The answer to that is an aviation lawyer's answer, and it indeed is. No, no. I don't want to know, can you rebuild a helicopter? Is it true that there was not a single rivet from that 2041 helicopter involved here? We do not have evidence in the record that that's the case, Your Honor. That's correct. Nor does the government have evidence in the record that it is not the case. It seems to me one of the problems here is that you've got a pretty good argument that says it's okay to reconstruct a helicopter or to put a helicopter together with military spare parts, depending on the parts and so forth. But the allegation here isn't simply whether or not you can do that. The allegation is that, and the premise of the criminal charge was that it was being represented as being this helicopter. There was an identification plate that said it's this helicopter, and it wasn't this helicopter, because you can't indicate that there was a single rivet that was from that helicopter. As we argued in our brief and supported in the record with the assessment by Mr. Axelrod and the evidence that we do have, the law of the Federal Aviation Administration is you do not have to have a single rivet from the original helicopter. And if you could get a license. But can you hold it out as being that helicopter when there's not a single rivet from that helicopter there? Yes, Your Honor. Under the aviation regulations we cited to you, that's the case. Well, under the criminal fraud law, I'm a little suspicious. If you're representing it to be 2041 and there's not a rivet of 2041 there. The aviation law is to the contrary, Your Honor. It allows that. It's just like rebuilding a 55 Chevy. You go out and buy a spare part to replace the bad ones. You may end up with a car that does not have a single original part. If you tell me I'm buying a 55 Chevy, there better be something from a 55 Chevy there. If it turns out all to be remanufactured parts, then that's fraud. One more point, if I may, Your Honor, on that. The rivet – and thank you. I've never been here before. I enjoy this, and I appreciate you listening to me. I'm taking your time. You'll have some time for rebuttal. The – in the record, the ER, I don't have the citation. We presented to you as part of our submission Mr. Reichart's revocation of airworthiness certificate for this helicopter. Visualize the idea, as the government suggests, that there are more than 10,000 differences in parts between a 204B helicopter and the UH-1. That is the premise of this indictment. In that revocation, they only cited five discrepancies, four of which are minor, and can be cured by replacement parts or by repositioning a scroll blank to where it should have been as opposed to where it was. There's evidence that this helicopter, even though I can't prove before you and did not prove before Judge Kuhnauer had a single original 204-1 part on it, is, in fact, a conforming 204B. It's conformity, not originality, under the Federal Aviation Law. It's a conforming 204B, but is it 2041? Because as I look at the indictment throughout there, there are particular references to this being represented to be serial number 2041. Only 2041 isn't there. It's a lot of parts put together to make a helicopter, and it may be an okay helicopter, but it's being represented to be 2041. I submit the Crane case for Your Honor's consideration as well. In Crane, the Federal Aviation Administration, involving the same investigators as here, charged civil fraud on the same theory. Improper data plate, twice-destroyed helicopter, a helicopter destroyed in Laos in 1967, destroyed in Alabama in 1988, rebuilt without original parts, rebuilt with military parts, didn't meet their burden of proof. The court of claims ruled that under aviation law this is permissible. How dare Mr. Anderson be charged with having been a partner of Mr. Powell's and trying to do the same thing? Thank you very much, Your Honor. I do request some time to rebut, but this is ‑‑ You'll have three minutes for rebuttal. I appreciate that. Thank you. Good morning, Your Honor. May it please the Court. My name is Peter Mueller. I'm an assistant United States attorney in Seattle representing the United States this morning. The issue before the Court in this appeal is whether or not the district court abused its discretion in finding that the indictment of Appellant Anderson was not vexatious, not frivolous, nor was it brought in bad faith. Chief Judge Kunawer found no ‑‑ in his consideration of the motion brought below, found no evidence that the prosecution was brought to annoy, harass, or with dishonest purpose toward Mr. Anderson. Additionally, the court held that Anderson had identified no binding precedent, no binding precedent, suggesting that his argument was so obviously wrong. What did the district court rely on for that finding? The district court relied on the ‑‑ I think principally on the United States supplemental submission, which set forth the basis for Mr. Anderson's implication in the fraud charge in the indictment. And that was supported by the affidavit of assistant United States attorney Thomas Wales, the chief prosecutor in the case. And what were the facts that were presented to show that it was not in bad faith and vexatious? The government produced, Your Honor, the government obtained evidence and possessed evidence that a series of acts were taken with respect to this Intrex helicopter, which clearly demonstrated fraudulent intent on the part of the promoters and the builders of this helicopter. It started with the fact that this was a ‑‑ Mr. Powell presented a forged bill of sale to the FAA, representing that he had purchased this helicopter from the original owner, PHI, when in fact the helicopter had crashed and been totally destroyed some 20 years earlier and had been deregistered by the FAA in 72. Mr. Powell and Mr. Anderson then formed a corporation, which was intended or ostensibly intended to repair 2041. However, the helicopter they produced was, in fact, manufactured from spare and military surplus parts. The initial inspection of the helicopter by representatives of the FAA in this region disclosed that the helicopter at that time bore a which purported to identify it as helicopter 2041. The mere fact that this ‑‑ even the data plate on this helicopter was not genuine is illustrative of the further proof. It's further proof, in addition to the forged bill of sale, that this was the helicopter which was being represented and presented falsely as 2041 was, in fact, a different machine. In addition, after the helicopter was inspected by the FAA, Mr. Anderson wrote, contacted the FAA and asked, inquired about the status of their investigation. In reply, in January of 1995, the FAA explicitly advised him that the helicopter that was the Intrex helicopter was not, in fact, the helicopter it purported to be. That is, it was not 2041, serial number 2041, manufactured by the Bell Helicopter Company in 1966, and that the data plate was not genuine. Further, the letter told Mr. Anderson that because the helicopter had been constructed from spare and military parts, the only procedure available to obtain an airworthiness certificate was to follow the procedures set forth in AC 2041, excuse me, AC 2113. Next, Mr. Anderson was advised by Mr. Pirtle of the FAA, by the FAA registration branch, that the helicopter was improperly registered because it was not 2114. It had to be re-registered under the procedures which are clearly set forth in the Federal Aviation Regulations at Title 14, Section 4733. And I invite the Court to examine that regulation. You don't dispute the proposition that, in fact, you could legally reassemble a helicopter and get it certified. Is that correct? Reassemble is, you could assemble a helicopter. Assemble, that's correct. Yeah, that's correct, Your Honor. We don't dispute that. That's provided for in 2041 and in the FAA Order 8132C, which is set forth in our brief. But that is not a procedure as explicitly set forth in 8132C for repairing a wrecked aircraft. That procedure is not available in that instance. If you're starting from scratch to build a helicopter from parts, you have to tell the FAA that's what you're doing. And then you have to follow those procedures and work with the inspectors to document the parts on your aircraft and show that they all conform to the type certificate for that civilian aircraft. The burden is on the owner to do this. In addition, then, the helicopter must pass inspection to be shown that it's safe and airworthy and ready for flight. Now, instead, these defendants falsified a bill of sale. They falsified, they submitted the registration. When they were told by the FAA that their craft was a counterfeit, they ignored that instruction and instead transported the helicopter 22,000 or 2,200 miles from Bellingham to Perden, Texas, presented to a different agency without, I mean, a different inspector, without advising that inspector that the helicopter's pedigree had been questioned in Seattle, claimed that they'd lost their original airworthiness certificate and therefore under 8031C they were entitled simply by that claim to get a new copy, obtained a replacement airworthiness certificate, and then presented falsified logbooks in which repairs, which were allegedly done to the helicopter, were signed as having been completed on particular dates with a forged signature of a mechanic who had died long before those repairs were completed. Based on this false presentation, they did an end run around the requirements of 2113. 2131. 2113, I'm sorry. They, instead of following the clear procedures that they, which are quite difficult and, in fact, I'm advised have never been successfully accomplished with respect to a helicopter, but that shows why these defendants chose not to follow them. They decided instead to try to pull a fast one, to take their constructed machine and continue to try to pass it off as the original machine falsely. Finally, when they were ultimately, they did this, after they got an airworthiness certificate by this kind of chicanery, they then contracted the machine to the Forest Service, falsely telling the Forest Service it was 2141 when it was not. The helicopter flew for about a week under the contract and then was removed from the contract because it exhibited substantial mechanical difficulties. Then the FAA Northwest Region found out about the fact that the helicopter had been certified in Texas, brought an emergency proceeding to revoke the airworthiness certificate, and the fraud continued. The FAA was then presented with a forged maintenance document, purportedly originated by the PHI, the original owner of the helicopter, which suggested that PHI had, in fact, early on after the crash, begun to repair the helicopter. This, in turn, would be supportive of the claim that this was, indeed, original 2041 that the FAA was considering. That document was a complete forgery. In fact, this aircraft not only crashed into the Gulf of Mexico, it lay in strong currents and salt water for more than a week, it was brought up in Texas. It was completely impossible to rebuild that aircraft under applicable FAA regulations. Regulations cited in my brief show that the FAA considers it improper to purport to repair an aircraft which has been ruled totally destroyed by the National Safety Transportation Board, as this helicopter was. So that there was a repeated pattern of false and fraudulent claims with respect to that helicopter that were clearly designed to put it in a position where it could be utilized and marketed as a 204B. Now, there may well be a legitimate basis for doing this, a legitimate way to do this under the FAA regulations. The problem in this case is that legitimate way was not followed here. This case is a case about fraud. It involved a persistent and sophisticated attempt to misrepresent the helicopter as something it was not in pursuit of financial gain. It was properly investigated and charged. There was no prosecutorial misconduct. The district court's finding that there was no showing that the prosecution was pursued vexatiously and frivolously and in bad faith should be sustained. Briefly, with respect to the prevailing party argument, Your Honor, I would like to bring to the court's attention that, of course, the Hyde Amendment represents a waiver of sovereign immunity. And as the Supreme Court has repeatedly instructed, such waivers must be carefully and strictly construed. The legislative history of the Hyde Amendment indicates that the relief provided was to be available only to defendants who were acquitted after trial. This grew out of a tension between Congress's desire to provide relief to persons who have been victims of egregious prosecutorial misconduct and its concern that prosecutorial discretion not be unduly hampered, nor prosecutorial initiative unduly chilled. Consequently, if relief under the Hyde Amendment is to be expanded to include defendants benefiting from a voluntary dismissal, as we have here, such a decision should not be reached based on a case such as Bronstein, where the issue was neither presented nor litigated. The sovereign immunity argument, I think, requires the Court to provide a – to only decide that issue after the issue was presented, litigated, and ripe for decision. In Bronstein, it was not. It was assumed as a threshold to the Court's consideration of the allegations of prosecutorial misconduct presented there. Finally, Your Honor, the response to Mr. Satchel's arguments, the Gardner case that he cites was one of the first cases to consider the Hyde Amendment. It was one of the first cases to consider the Hyde Amendment after it was passed. And it has not been followed in any substantial degree by the other courts. What happened in Gardner was that the Court reached out to require extensive production of the underlying investigative agency record. And I submit it plunged itself into a morass of litigation that went on for months and months. As a result, contrary to the cautions of the Supreme Court in Buckhannon, that fee-shifting litigation should not result in further major litigation. In addition, it relied on the notion that because the Hyde Amendment incorporates the procedures and limitations of the EJ, that it also incorporates the definitions. But that's not what the Hyde Amendment says. It says procedures and limitations. And the position of the United States under the Hyde Amendment is a definition. And since the Hyde Amendment as a waiver of sovereign immunity is to be strictly construed, that argument has to be carefully reviewed. I would point out that although Mr. Setchell claims that the indictment in this case is a frivolous indictment that does not charge an offense, the parties below never sought dismissal of the argument on that ‑‑ of the indictment on that argument. They moved to dismiss portions of it under the Cleveland case. But that does not address Hyde Amendment relief since the Cleveland case came down after the indictment and in any event would not have eliminated the entire indictment. The Court will bear with me for just a second. The Court asked Mr. Setchell, why are we here talking about the FAA in this case? And I submit Setchell talked about the FAA because he did not address and has yet to address the clear elements of fraud that supported this indictment. This was a fraud case. And the government possessed sufficient evidence on which, as Judge Cunar found, on which to base its indictment of Mr. Anderson. Having found that, the Court was not required to grant further discovery. Judge Cunar's decision should be upheld.  Thank you. Thank you. Thank you. Thank you, Your Honors, for the three minutes. In response to the last argument, which is on the merits of the Hyde Amendment appeal, as opposed to the absence of a record and the good cause arguments we have made, the Crane case in the Court of Claims at 45 Federal Claims 410, handed down in 1999 before this indictment was presented, was a fraud case. Crane cannot be distinguished on its merits from the claims of the government in this case. Crane was a civil fraud case where the government raised fraud as a defense to a claim by Crane that the FAA had wrongfully interfered to terminate a Forest Service contract. In Crane, there was no title at first. Title had to be created, and it was created. The helicopter was twice destroyed, once in Laos in 1967, once in Alabama in 1988. It was repaired in the South in 1989 or so with military parts in part. It got into a Forest Service contract, and then Mr. Reichart and his crew from the Northwest descended and grounded the helicopter. There, as here, there is no distinction. Crane was a fraud case. The Court of Claims, after hearing weeks of testimony, ruled that the government did not have a case because under relevant aviation law, including something that the government continues to duck, and that's Aviation Circular 20-62D, you can repair a destroyed helicopter using surplus parts from the military so long as those parts conform. Upon inspection in Texas, an FAA-authorized repair station, a Bell-authorized repair station for UH-1s, Mr. Boatwright looked this helicopter over as he was supposed to. Kennedy. Pardon me, Your Honor? I mean, I think that the challenge posed by Mr. Mueller was that this helicopter was taken 2,200 miles to get it in front of a different inspector who didn't know the suspicion that the local office had raised. Why was it taken to Texas? The answer in the record is to have a qualified shop do the repair at reduced cost. The answer I want to give you is it doesn't matter. The FAA is supposed to be one national entity with one set of standards, and if you have someone like Agent Reichart on your back in one district, I can't see that there's anything wrong with saying, Reichart, I'm going to just go ahead and take this someplace else and let the FAA deal with it on its merits like it should be instead of in this vindictive, persistent manner that you've looked at it. Remember, Reichart and his crew did crane. That's in California. What are they doing there? Now, another answer, a final answer to that same question is that we have the declaration in the record from Mr. Boatwright. He did his work correctly. The FAA regulations permit the fabrication. I'll use that word as opposed to falsification of log books. And as long as you don't falsify a parts tag like Mr. Garlick did in the case cited by the government, under the aviation rules, that's all okay. A fraud case, alleged, an unprovable fraud case, please look at crane. Thank you, Your Honors. Thank you. I thank both counsel for the argument and for earlier starting time. This case is submitted and that concludes our calendar for this morning. So the court is adjourned. Thank you.
judges: Browning, Alarcon, Clifton